**Laraine Gail HART, Appellant,**

v.

**KUPPER PARKER
COMMUNICATIONS, INC.,
Respondent.**

**No. ED 82005.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 22, 2003.

Rehearing Denied Sept. 4, 2003.

David O. Kreuter, Kreuter & Gordon
P.C., Clayton, MO, for Appellant.

Patrick R. Gunn, Sharon R. Wice, Gunn
and Gunn, St. Louis, MO, for Respondent.

GARY M. GAERTNER, Sr., Judge.

Appellant, Laraine Gail Hart ("plaintiff"), appeals the summary judgment entered by the Circuit Court of St. Louis County in favor of respondent, Kupper Parker Communications, Inc., ("KPC"), in her action seeking to exercise her dissenter's rights as an alleged shareholder of KPC. We reverse and remand.

Kupper Advertising, Inc., ("KA") was first organized under the laws of Missouri on January 11, 1979. Plaintiff was an employee of KA and was issued one (1) share of stock in KA on November 17, 1979. On March 7, 1985, KA and its shareholders executed a stock agreement and plaintiff surrendered her one (1) share of stock and was reissued one hundred (100) shares of stock in KA.[1] Plaintiff retained in her possession the certificate representing one hundred (100) shares of KA.

On November 1, 1992, an agreement and plan of merger ("merger plan") was made and entered between KA and KPC for the eventual merge of KA into KPC ("KA–KPC merger"), a corporation organized under the laws of Missouri. Pursuant to the merger plan, each five (5) "outstanding" shares of KA stock was converted to one (1) share of KPC stock effective November 1, 1992.

Prior to the merger plan, in late 1991 or early 1992, plaintiff became aware of the KA–KPC merger. The president of KA, Bruce Kupper ("Mr.Kupper"), told plaintiff that she would not be a shareholder in the new corporation formed by the KA–KPC merger. However, plaintiff disagreed with Mr. Kupper's statement and never surrendered or transferred her stock certificate, which evidenced her one hundred (100) shares of stock in KA.

Also, prior to the KA–KPC merger, Mr. Kupper told plaintiff that he was giving plaintiff a life insurance policy ("the policy") and its cash surrender value in exchange for plaintiff's stock in KA. Plaintiff never previously paid any premiums on the policy. Plaintiff was transferred the policy on March 19, 1991 via an owner designation form signed by the vice-presi-

---

1. KPC stated this fact in its motion for summary judgment and plaintiff admitted this fact in her response. Therefore, we treat this fact as true although the deposition of plaintiff reveals she kept the certificate of stock for her one (1) share of KA stock in her possession. Regardless, the ownership of the one (1) share of KA stock is not an issue on appeal.

dent of KA. However, on May 3, 1991, plaintiff re-assigned the policy to KA. The policy still remains in effect.

Plaintiff discontinued employment with KPC in February of 1994. The certificate of merger reflecting the KA–KPC merger was issued by the state of Missouri on May 4, 1994.

On October 10, 1995, plaintiff filed a lawsuit against KPC seeking to, *inter alia,* inspect the corporate records and books pursuant to section 351.215, RSMo 1994, and dissolve the corporation pursuant to section 351.494, RSMo 1994. Plaintiff subsequently dismissed the lawsuit.

On September 29, 2000, KPC and Greenstone Roberts Advertising, Inc., ("GRA"), a corporation organized under the laws of the state of New York, merged ("KPC–GRA merger"). Each one (1) share of KPC stock was exchanged for 5,450 shares of GRA stock. Sometime thereafter, plaintiff learned of the KPC–GRA merger via the internet.

On March 1, 2001, plaintiff commenced this lawsuit, which requested the trial court to calculate the fair market value of her shares of stock subsequent to the KPC–GRA merger and to order KPC to purchase her shares for the value calculated.

On May 22, 2002, KPC filed a motion for summary judgment along with authorities in support. KPC alleged: 1) that plaintiff's suit was barred by her failure to make a written objection or demand on KPC for payment of the fair value of her alleged shares within twenty days of either the KA–KPC merger or the KPC–GRA merger; 2) that plaintiff's suit was barred by the five-year statute of limitations; and 3) that plaintiff's suit was barred because plaintiff was not a shareholder at the time of either merger.

In support of its motion for summary judgment KPC filed: 1) the certificates of the KA–KPC merger and KPC–GRA merger; 2) a letter from plaintiff's attorney to Mr. Kupper dated March 31, 1994; 3) selected Missouri statues; 4) the owner designation form of policy dated March 19, 1991; and 5) the deposition of Mr. Kupper.

On June 24, 2002, plaintiff filed a response to KPC's motion for summary judgment. Plaintiff admitted she had never made a written objection or demand on KPC for payment of the fair value of her alleged shares within twenty days of either the KA–KPC merger or the KPC–GRA merger. Plaintiff denied her claim was barred by the statute of limitations. Plaintiff admitted that in late 1991 Mr. Kupper told her she would not be a shareholder in the new corporation, but that she responded to Mr. Kupper that she did not agree or consent to his statement. Plaintiff also admitted that Mr. Kupper did make a statement to her regarding the exchange of the policy for her shares of stock in KA; however, plaintiff denied that she accepted the policy in exchange for her shares of stock in KA. Plaintiff asserted the policy was reassigned to KA on May 3, 1991.

In support of plaintiffs response to KPC's motion for summary judgment plaintiff filed: 1) the deposition of plaintiff; 2) a stock agreement dated March 7, 1985; and 3) the owner designation form of the policy dated March 19, 1991.

On June 24, 2002, plaintiff filed a motion for summary judgment, which alleged plaintiff was a shareholder of KPC and was never given proper notice of the shareholders' meeting to approve the KPC–GRA merger. Plaintiff alleged she held 109,000[2] shares of KPC valued at $245,250 after the KPC–GRA merger.

---

**2.** Plaintiff arrives at this figure by arguing she

owned one hundred (100) shares of KA stock

In support of plaintiff's motion for summary judgment she filed: 1) numerous documents evidencing and regarding the KA–KPC merger and the KPC–GRA merger; 2) the reassignment of the policy dated May 3, 1991; 3) plaintiff's affidavit that asserted her allegations were true and correct; and 4) the affidavit of a registered investment advisor who valued the stocks plaintiff alleged to hold at $245,250.

On August 9, 2002, KPC filed a response to plaintiff's motion for summary judgment and an affidavit of Mr. Kupper regarding the value of one (1) share of KPC stock.

On August 27, 2002, plaintiff filed a reply memorandum of law in support of her motion for summary judgment and in opposition to KPC's motion for summary judgment. Plaintiff attached a new affidavit signed by her and the merger plan dated November 1, 1992.

On September 23, 2002, the trial court, without making findings of fact and conclusions of law, found there was no genuine issue as to any material fact and that KPC was entitled to a judgment as a matter of law. KPC's motion for summary judgment was granted and plaintiff's motion for summary judgment was denied. Plaintiff's petition was dismissed with prejudice. Plaintiff appeals.

The standard of review of a summary judgment is *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). A summary judgment is proper if there is an absence of disputed issues of material fact and the movant has demonstrated that it is entitled to judgment as a matter of law. *Id.* at 380. The movant has the burden to show a right to judgment that flows from facts which there is no genuine dispute. *Id.* at 378. The trial court when it considers a motion for summary judgment tests simply for the existence, not the extent, of genuine disputes. *Id.* Genuine disputes exist where the record contains competent material that evidences two plausible, but contradictory, accounts of the facts. *ITT*, 854 S.W.2d at 382. A summary judgment is not proper if the trial court must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment. *Id.* at 378. Summary judgment is a drastic remedy, which borders on a denial of due process and effectively denies the party against whom it is entered a day in court. *Bellon Wrecking & Salvage, Co. v. Rohlfing*, 81 S.W.3d 703, 705 (Mo.App. E.D. 2002).

We "review the record in the light most favorable to the party against whom judgment was entered[,]" and accord that party the benefit of all inferences which may reasonably be drawn from the record. *ITT*, 854 S.W.2d at 376. The facts set forth by affidavit or otherwise in support of party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

In her sole point on appeal, plaintiff argues the trial court erred in granting KPC summary judgment as a matter of law.

Section 351.455, RSMo 2000[3] states, in pertinent part, the following:

pursuant to the stock agreement of March 1985. Subsequently, plaintiff contends those one hundred (100) shares were converted into twenty (20) shares of KPC stock pursuant to the merger plan of November of 1992. Finally, plaintiff asserts those twenty (20) shares of KPC stock were exchanged at a rate of one (1) share of KPC for 5,450 shares of GRA pursuant to the KPC–GRA merger. Thus, 5,450 shares multiplied by 20 shares equals 109,000 shares.

3. All further statutory references are to RSMo 2000, unless otherwise noted.

1. If a shareholder of a corporation which is a party to a merger or consolidation *shall file with such corporation, prior to or at the meeting of shareholders at which the plan of merger or consolidation is submitted to a vote, a written objection to such plan of merger or consolidation, and shall not vote in favor thereof, and such shareholder, within twenty days after the merger or consolidation is effected, shall make written demand on the surviving or new corporation for payment of the fair value of his shares* as of the day prior to the date on which the vote was taken approving the merger or consolidation, the surviving or new corporation shall pay to such shareholder, upon surrender of his certificate or certificates representing said shares, the fair value thereof.... *Any shareholder failing to make demand within the twenty day period shall be conclusively presumed to have consented to the merger or consolidation and shall be bound by the terms thereof.*

2. If within thirty days after the date on which such merger or consolidation was effected the value of such shares is agreed upon between the dissenting shareholder and the surviving or new corporation, payment therefor shall be made within ninety days after the date on which such merger or consolidation was effected, upon the surrender of his certificate or certificates representing said shares....

3. If within such period of thirty days the shareholder and the surviving or new corporation do not so agree, then the dissenting shareholder may, within sixty days after the expiration of the thirty day period, file a petition in any court of competent jurisdiction within the county in which the registered office of the surviving or new corporation is situated, asking for a finding and determination of the fair value of such shares, and shall be entitled to judgment against the surviving or new corporation for the amount of such fair value as of the day prior to the date on which such vote was taken approving such merger or consolidation, together with interest thereon to the date of such judgment. The judgment shall be payable only upon and simultaneously with the surrender to the surviving or new corporation of the certificate or certificates representing said shares.... *Unless the dissenting shareholder shall file such petition within the time herein limited, such shareholder and all persons claiming under him shall be conclusively presumed to have approved and ratified the merger or consolidation, and shall be bound by the terms thereof.* Section 351.455 (emphasis added).

However, section 351.420 states the following:

The plan of merger or plan of consolidation shall be submitted to a vote at a meeting of shareholders, which may be either an annual or a special meeting. *Written or printed notice stating that the purpose, or one of the purposes, of the meeting is to consider the plan of merger or the plan of consolidation, together with a copy or a summary of the plan of merger or plan of consolidation, shall be given to each shareholder of record entitled to vote at the meeting* within the time and in the manner provided by this chapter for the giving of notice of meetings of shareholders. If the meeting is an annual meeting, the purpose shall, nevertheless, be included in the notice of the annual meeting. Section 351.420 (emphasis added).

Section 351.420 operates to protect shareholders' rights. *Rosemann v. Roto–Die Co., Inc.*, 947 S.W.2d 507, 511 (Mo.App. E.D.1997).

In *Rosemann*, a shareholder-director of a corporation brought a declaratory judgment action against the corporation and members of its board to recover the value of his shares pursuant to section 351.455.1. *Id.* at 510. The shareholder-director asserted that the corporation failed to comply with the statutory requirements for merger under section 351.420, and as a result, the shareholder director argued, he was unable to, and was not required to, comply with the requirements for a dissenting shareholder to recover the value of his shares under section 351.455. *Id.* at 511. This court found that any violation of section 351.420 was immaterial as to whether or not the shareholder-director could avail himself to dissenting shareholders' rights afforded him pursuant to section 351.455 because he was "very much apprised of the details of the plan of merger and voted in favor of the merger." *Id.* at 511–12.

■ We find that this case is distinguishable from *Rosemann*, and if in fact plaintiff is a "shareholder of record entitled to vote" she should have received written or printed notice of a shareholders' meeting pursuant to section 351.420. KPC's noncompliance with the statutory requirements of section 351.420 is material in this case, unlike in *Rosemann*, because plaintiff was not apprised of the details of the KPC–GRA merger and she did not vote in favor of the merger. Section 351.420 operates to protect shareholders' rights, therefore, plaintiff, if she is a shareholder, should have received notice of the shareholders' meeting and, under these circumstances, her duties as a dissenting shareholder pursuant to section 351.455

were, in effect, waived due to KPC's failure to comply with section 351.420.

KPC cites to two Southern District cases, *Thornton v. Empire Bank*, 955 S.W.2d 249 (Mo.App. S.D.1997) and *Boggs v. Farmers State Bank*, 846 S.W.2d 233 (Mo.App. S.D.1993), for the proposition that plaintiff's failure to comply with the statutory requirements of section 351.455 is fatal to her claim. Both the Southern District cases examined section 362.730, which is the statute that sets forth the procedure a dissenting bank shareholder must follow in objecting to a merger. *Thornton*, 955 S.W.2d at 250; *Boggs*, 846 S.W.2d at 234. Section 362.730 states a bank shareholder "not voting in favor of the agreement to merge or consolidate," has sixty days after the merger or consolidation takes effect, in which to request such an evaluation by filing a petition in the circuit court of the where the principal place of business of the receiving corporation or consolidating corporation exists. *Thornton*, 955 S.W.2d at 250 (*quoting* section 362.730). A shareholder who does not do this "within the time herein prescribed shall be conclusively presumed to have assented to the merger or consolidation and shall be bound thereby as fully and as firmly as if he had voted therefor." *Id.* The Southern District, in both cases, found that the dissenting shareholders failed to seek valuation from the circuit court within the prescribed period; thus they were barred from relief. *Thornton*, 955 S.W.2d at 251; *Boggs* 846 S.W.2d at 236. The court in *Thornton* found the trial court had no jurisdiction to proceed and remanded the cause for dismissal. *Thornton*, 955 S.W.2d at 251.

We agree with KPC that sections 362.730 and 351.455 share similar language. It is also undisputed that plaintiff did not comply with section 351.455. However, what distinguishes this case from the

two Southern District cases, besides the fact we are examining statutes contained in different chapters, is that the Southern District did not address the issue of notice. Section 362.680 states that the agreement for merger and consolidation of a bank or trust company is to be submitted to shareholders. Section 362.680.1. Section 362.680 also states the procedures and exceptions for this notice. Section 362.680. In the Southern District cases, none of the shareholders claimed there was ineffective notice given. The Southern District, in either case, did not address the issue of ineffective notice in relation to dissenters' rights.

In this case, however, plaintiff does raise the issue of notice and cites section 351.420. Under these circumstances, if in fact plaintiff is a shareholder, we find that it would be unfair for her to be expected to comply with the duties and time limits imposed on dissenting shareholders by section 351.455 when she was not properly noticed of the KPC–GRA merger and only learned of it after the fact via the internet.

However, the determination that still must be made is whether plaintiff is a shareholder of KPC. Pursuant to section 351.015, a shareholder is defined as "one who is a *holder of record* of shares in a corporation." Section 351.015(15) (emphasis added). Under the same statute, a "certificate of stock" is defined as "a written instrument signed by or bearing the facsimile signature of the proper corporate officers ... evidencing the fact that the person therein named is the *holder of record* of the share or shares therein described." Section 351.015(3) (emphasis added). Also, pursuant to section 351.255.1, "[t]he original share ledger or transfer book, or a duplicate thereof ... shall be prima facie evidence as to who are the shareholders entitled to ... vote at

any meeting of shareholders." Section 351.255.1.

Neither plaintiff nor KPC submitted any certificates of stock to the trial court. However, KPC admitted plaintiff retained in her possession the certificate of stock representing one hundred (100) shares of KA stock. KPC argues that although plaintiff retains her KA stock, she was never a shareholder in KPC after the KA–KPC merger. But, KPC never submitted a share ledger or transfer book, which would be prima facie evidence under section 351.255, as to whom are and who were the shareholders entitled to vote at any meeting of shareholders subsequent to the KA–KPC merger.

Plaintiff argues her retained certificate of stock in KA was converted to KPC stock pursuant to the merger plan of November of 1992. The merger plan, as to the conversion of shares, states:

4.1 [KPC] presently has issued and outstanding one thousand (1000) shares of $1.00 par value common stock ("KPC Common"), which shares of KPC Common are the only outstanding shares of [KPC].

4.2 [KA] presently has issued and *outstanding one hundred (100) shares* of $1.00 par value common stock ("KA Common").

4.3 At the Effective Time [November 1, 1992], each five (5) issued and *outstanding shares* of KA Common shall be converted into one (1) share of KPC Common. After [November 1, 1992] each holder of an *outstanding* certificate or certificates theretofore representing shares of KA Common *may, but shall not be required to,* surrender the same to [KPC] for cancellation or transfer, and each such holder or transferee will be entitled to receive certificates representing, respectively, one (1) share of KPC Common for every five (5) shares

of KA Common previously represented by the stock certificates surrendered. *Until so surrendered or presented for transfer, each outstanding certificate which prior to [November 1, 1992] represented five (5) shares of KA Common shall be deemed and treated for all corporate purposes to represent the ownership of one (1) share of KPC Common* .... (emphasis added).

Plaintiff cites section 4.3 of the merger plan to support her argument that she was not *required* to surrender her shares of KA stock to KPC for cancellation or transfer and that every five (5) of her shares of KA stock "shall be deemed and treated for all corporate purposes to represent the ownership of one (1) share of KPC."

■ KPC counters that the merger plan was not properly before the trial court because it was attached to and argued by means of a reply memorandum of law in support of plaintiff's motion for summary judgment and in opposition to KPC's motion for summary judgment. KPC argues that Rule 74.04 does not allow for such a pleading and KPC objected by letter to the trial court. We note that the merger plan was included in the legal file on appeal, and the filing of the reply memorandum was entered in the minutes of proceedings. Also, entries stated that two letters from KPC's counsel were filed with the trial court subsequent to the filing of reply memorandum. However, no objection to the merger plan or the reply memorandum was noted in the minutes of the proceedings.

Former Rule 74.04(c)(3), which applied to this motion, provided for the trial court to rule after the response to a motion for summary judgment has been filed.[4] *Cross*

*v. Drury Inns, Inc.*, 32 S.W.3d 632, 636 (Mo.App. E.D.2000). However, trial courts were allowed to permit the parties to present further argument by means of reply memorandum. *Id.* This court has permitted the trial court to consider documents attached to a reply memorandum in accord with Rule 74.04(e) if those documents *supplemented* or opposed affidavits but did not raise new issues, grounds, or arguments. *Id.* (emphasis added).

Plaintiff's reply memorandum cited the merger plan in response to KPC's statement in its memorandum of law attached to its response to plaintiff's motion for summary judgment regarding plaintiff's failure to determine her status as a shareholder at the time of the KA–KPC merger. Plaintiff attached a copy of the merger plan and an affidavit alleging it was a true and correct copy. The merger plan or the reply memorandum did not raise any new issues or grounds for the trial court. The merger plan only supported plaintiff's original argument that she was a shareholder of KPC and it supplemented her original affidavit that based on her knowledge the fact that she was a shareholder of KPC was true. Thus, we find that the merger plan was properly before the trial court and is now properly before this court as part of the record on appeal.

■ Regardless, KPC argues the merger plan does not support plaintiff's position that she was a shareholder in KPC. KPC points also to the language of section 4.3 of the merger plan and asserts the section only applies to "outstanding shares of KA Common." KPC contends that at the time the merger plan was created, plaintiff was not the holder of any shares of stock because her stock had been repurchased in exchange for the policy in March of 1991. KPC alleges that plaintiff exchanged her

---

**4.** Rule 74.04(c) was amended effective January 1, 2003 and now provides specific guide- lines for replies and sur-replies.

350

shares of KA stock for the policy and, at one point, "actually put her certificate in the stock book of [KPC]." Mr. Kupper also testified in his deposition that "[plaintiff] put her certificate back into the book" for the one hundred (100) shares of KA stock, but the stock certificate was not "in the book" when plaintiff discontinued employment with KPC.

KPC's argument regarding the merger plan neglects to consider that, according to the deposition testimony of plaintiff, she denied she exchanged her stock for the policy. Also, plaintiff reassigned the policy for value to KA before the merger plan was created. Lastly, there is a dispute whether plaintiff held "outstanding shares" of KA at the time of the merger plan.

In this case, each party argues it is entitled to summary judgment as a matter of law. However, due to the conflicting evidence regarding whether plaintiff is a shareholder of KPC, we find that, despite their contentions to the contrary, a genuine issue of material fact remains in this case. *See Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181, 184 (Mo.App. E.D.1998)(reversing and remanding for further proceedings because a genuine issue of material fact remained regarding the interpretation of a contract even though both parties on appeal argued they were entitled to summary judgment as a matter of law). A genuine dispute exists regarding plaintiff's status as a shareholder and the record contains competent material that evidences two plausible, but contradictory, accounts of the facts. Therefore, based on the circumstances of this case and the conflicting evidence presented by the parties, only the trier of fact can determine whether plaintiff was indeed a shareholder of KPC.

However, KPC argues that even if plaintiff is a shareholder, plaintiff, as a matter of law, is not entitled to a judgment in her favor because her claim is barred by the statute of limitations or waived by laches. Because the trial court's grant of summary judgment will be affirmed if it is sustainable on any theory, and the trial court did not make findings of fact or conclusions of law, we must address whether plaintiff's claim was barred as a matter of law. *See Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 148 (Mo.App. E.D.1993).

Section 516.120 provides that the statute of limitations for actions for liabilities created by statute is five (5) years. Section 516.120. Laches requires that a party with knowledge of facts that give rise to his or her rights unreasonably delays asserting those rights for an excessive period of time and the other party suffers legal detriment due to the delay. *Nahn v. Soffer*, 824 S.W.2d 442, 444–45 (Mo.App. E.D.1991). If the doctrine of laches applies in a particular case depends on the length of delay, the reasons for the delay, how the delay affected the other party, and the overall fairness in permitting the assertion of the claim. *Id.*

KPC contends plaintiff's action accrued when she became aware that her ownership of stock was disputed and KPC took hostile action regarding her status as a shareholder. *See Sharon v. Kansas City Granite & Monument Co.*, 233 Mo.App. 547, 125 S.W.2d 959, 963 (K.C.Dist.1939)(holding the statute of limitations began to operate when the plaintiff was notified by an unequivocal act that plaintiff's right to the stock was disputed); *Maynard v. Doe Run Lead Co.*, 305 Mo. 356, 265 S.W. 94, 98–99 (1924)(holding a shareholder's cause of action accrued, for statute of limitations purposes, when shareholders and directors of a company asserted a right to stock, which was hostile to the plaintiff's claim to the stock). Specifically, KPC argues plaintiff's cause of action began to accrue at the earliest at

the end of 1991 per her conversation with Mr. Kupper that she would not be a shareholder in the new corporation and at the latest in May of 1994 when the certificate of merger for the KA KPC merger was issued. Regardless of what date triggered the statute of limitations, KPC argues plaintiff's five-year period to file a cause of action had elapsed by March 1, 2001, the date this cause of action was filed.

In promulgating its arguments in support of a bar to plaintiff's claim based on the statute of limitations or laches, KPC neglects to consider that plaintiff's cause of action addresses the KPC–GRA merger, not the KA–KPC merger. Plaintiff, based on the merger plan, believed her shares of KA stock were converted to shares of KPC stock through no action on her part. If plaintiff's interpretation of the merger plan is correct, which is a question of fact as addressed above, then plaintiff became a shareholder in KPC and would not be expected to file a cause of action if she was satisfied with her status as a shareholder in KPC. It was not until after the KPC–GRA merger that plaintiff decided to file this suit. KPC argues that when Mr. Kupper told plaintiff she would no longer be a shareholder, plaintiff's rights as a shareholder were disputed and the statute of limitations was triggered. We do not find that a single conversation by Mr. Kupper and plaintiff without anything more, especially in light of the merger plan, was an "unequivocal act" that gave plaintiff notice that her right to her stock was in dispute.

KPC also points to the lawsuit filed by plaintiff in 1995 as evidence that plaintiff was aware of the KA–KPC merger but did not bring the suit at issue until March 1, 2001. The lawsuit brought by plaintiff in 1995, which was later dismissed voluntarily by plaintiff, sought to assert her rights as a shareholder. The lawsuit brought in 1995 supports plaintiff's argument that she was a shareholder in KPC after the KA–KPC merger. The record on appeal is devoid of the reason why plaintiff dismissed the first lawsuit, and we do not find that her dismissal, as KPC suggests, was an admission she was not a shareholder of KPC.

We do not find that, based on a matter of law, plaintiff's claim was barred by the statute of limitations or laches. However, we reverse and remand for further proceedings because we find a genuine issue of material fact was raised regarding whether plaintiff is a shareholder in KPC. If plaintiff is determined to be a shareholder we find as a matter of law that her duties under section 351.455 were in effect waived due to KPC's failure to comply with section 351.420.

Based on the foregoing, we reverse and remand for further proceedings consistent with this opinion.

KATHIANNE KNAUP CRANE, J. and PAUL J. SIMON, Sr. J. concur.